IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LARRY L. SAVAGE, SR.,                )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )   Civ. No. 04-1478-SLR
                                     )
JO ANNE BARNHART ,                   )
COMMISSIONER, SOCIAL SECURITY        )
ADMINISTRATION,                      )
                                     )
          Defendant.                 )

_____

Steven L. Butler, Esquire of Law Offices of Gary Linarducci, New
Castle, Delaware.  Counsel for Plaintiff.

Colm F. Connolly, United States Attorney and David F. Chermol,
Special Assistant United States Attorney, United States
Attorney's Office, Wilmington, Delaware.  Counsel for Defendant.
Of Counsel:  Donna L. Calvert, Regional Chief Counsel Social
Security Administration, Philadelphia, Pennsylvania.

_____

**MEMORANDUM OPINION**

Dated: January 6 , 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I.    INTRODUCTION

Plaintiff Larry L. Savage ("plaintiff") filed this action
against defendant Jo Anne Barnhart, Commissioner of Social
Security ("defendant"), on November 24, 2004.   (D.I. 2)
Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g),
of a decision by defendant denying his claim for disability
income benefits under § 216(i) of the Social Security Act.   (Id.)
Currently before the court are the parties' cross motions for
summary judgment.   (D.I. 15, 18)   For the reasons stated below,
the court will deny defendant's motion, deny plaintiff's motion
and remand for further proceedings.

## II.   BACKGROUND

### A.    Procedural Background

On July 12, 2001, plaintiff filed an application for
disability insurance benefits. (D.I. 8 at 99)   Plaintiff claimed
chronic back and neck pain, head aches, sore knee, left chest
pain, divirticulitis, muscle spasms and somatization disorder.[1]
(Id. at 114)   The claim was denied initially and upon review
because it was determined that his ailments were not severe
enough to keep plaintiff from working.   (Id. at 83, 89)
Plaintiff requested a hearing before an administrative law judge

---

[1]Somatization disorder is a "chronic, severe psychiatric
disorder characterized by many recurring clinically significant
physical complaints . . . that cannot be explained fully by a
physical disorder."   (D.I. 16 at 30) (citing Merck Manual of
Diagnosis and Therapy, § 15, Ch. 186)

("ALJ").   The hearing was held on July 24, 2002.   (D.I. 8 at 28)

On October 25, 2002, the ALJ denied plaintiff's claim.   (Id. at

15)   The ALJ found the following:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
> 3. The claimant's affective disorder, anxiety disorder, diverticulitis, diabetes mellitus, and hypertension are considered "severe" impairments based on the requirements in the Regulations (20 CFR §§ 404.1520(b) and 416.920(b)).
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
> 5. The undersigned does not find the testimony and allegations to be credible regarding the severity of the claimant's impairments and symptoms and their effect on his functional abilities.
> 6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).
> 7. The claimant has the following residual functional capacity:  he is able to lift and carry 20 pounds; engage in a good deal of standing, walking, and sitting; perform jobs not involving heights; and perform unskilled jobs involving simple, routine job tasks with minimal interaction with the public and co-workers.
> 8. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).
> 9. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§ 404.1563 and 416.963).
> 10. The claimant has a "high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.968).
> 11. The claimant has no transferable skills from any past relevant work (20 CFR §§ 404.1568 416.968).

2

12. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).
13. Although the claimant's limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a mail clerk, marking clerk, and routing clerk.
14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Id. at 22-23) On October 29, 2004, the Appeals Council declined to review the ALJ's decision and his decision became the final decision of the Commissioner. (Id. at 5)

## B.  Plaintiff's Written Submissions to SSA

On July 11, 2001, plaintiff submitted a written application for Disability Insurance Benefits and for Supplemental Security Insurance payments in which he indicated that he had been unable to work since June 12, 2001 because of his disabling condition. (D.I. 8 at 99-100) On July 12, 2001, plaintiff submitted an Adult Disability Report and reported that he was unable to work as a result of severe headaches, muscle spasms, left wrist injury, chronic neck and back pain, somatization disorder, and divirticulitis. (Id. at 114) Plaintiff stated in the report that he had never been in so much continuous pain in his life. (Id. at 121)

Plaintiff completed a Disability Daily Activities

3

questionnaire. (Id. at 136) Plaintiff stated that he was previously working two jobs. (Id.) He is now kept from working because his stomach hurts and he is afraid to work. (Id. at 142) When he goes out of the house, he walks or rides the bus, but does not drive because his car is "broke." (Id. at 138) Plaintiff marked that he sometimes prepares his own meals, but when asked how often he cooks, plaintiff responded, "Most times when we have food to eat." (Id. at 138) Plaintiff stated that if it is not too hot, he will do household chores such as vacuuming, mopping and sweeping. (Id.) Plaintiff states that he tries to not do the chores too often because his stomach hurts. (Id.) Plaintiff sometimes goes food shopping, reads books with his daughter and watches movies for about five hours per day, but states that he has a memory problem and, therefore, has trouble remembering and understanding what he read or watched. (Id.) Plaintiff does not visit with friends or relatives and states that "I don't do much of anything anymore." He states he is scared to do anything too strenuous "because I'm to[o] scared that my intestines will explode and I may die." (Id. at 141)

## C. Facts Evinced At The Administrative Law Hearing

Plaintiff is a 42 year old male who is five foot seven inches tall and weighs over 200 pounds. (Id. at 32, 56) Plaintiff has a high school education and his past employment includes unloading trucks at Ames, cleaning and dealing with

4

patients at Kirkwood detox, sales at Hickory Farms, dishwashing at Brandywine Country Club and as a baker at Federal Bake Shop. (Id. at 36-37)  Plaintiff stated that he was fired from his last job due to a bout with diverticulitis lasting a couple of days, during which he was out from work.  (Id. at 36)

Plaintiff testified that he does not check his blood sugar level and is no longer on insulin.  (Id. at 33)  Plaintiff was wearing a brace on his left wrist as a result of an accident and surgery several years ago.  (Id. at 34-35)  Plaintiff testified that a doctor put a 30 pound limit on the weight plaintiff could lift and carry.  (Id. at 35)  Plaintiff testified that he could not pour a gallon of milk with his left hand and could only lift a five pound bag of sugar with pain.  (Id. at 40-41)  Plaintiff has no difficulties with picking things up with his hands, only with lifting heavy objects.  (Id. at 39)  Plaintiff stated he could sit for an hour at a time and, out of an hour, stand for 35 or 40 minutes before his back and neck hurt.  (Id.)  He can walk for 45 to 50 minutes out of an hour before his back, neck and knees hurt.  (Id. at 40)

Plaintiff takes propoxyphene for headaches.  (Id. at 42) Plaintiff states he gets headaches "maybe twice a week" and they last "from I guess an hour to three or four hours."  (Id. at 42) On a pain scale of zero to ten, plaintiff testified he endures pain around nine or ten during the three to four hours.  (Id. at

43)  Plaintiff testified that he has more bad days than good
days, but was not able to articulate a difference in his
activities on the different days.  (Id. at 44-45)  Plaintiff also
testified regarding the pain associated with diverticulitis.  He
testified that he still "get[s] it back every now and then."
(Id. at 54)  He testified that it gets inflamed three times a
month.  (Id.)  During each inflamation, the pain level is a 7 or
8 on a scale from zero to ten and will last "maybe a day or two."
(Id. at 54)

       Plaintiff testified that he takes quetiapine, trade name
Seroquel, for management of psychotic disorders.  (Id. at 48-49)
Plaintiff complained of hearing voices all day, but they never
interfered to the point of causing him to hurt anyone or getting
him fired.  (Id. at 50)

       Plaintiff's wife, Carlyn Savage, also testified at the
administrative hearing.  She testified that plaintiff cannot take
care of any of the business at home.  (Id. at 61)  She testified
that plaintiff is depressed all day and blames himself for
everything.  (Id. at 62)  She testified that he is cranky and it
is difficult for her to deal with.  (Id.)  She testified that
plaintiff has applied for jobs, but has not been able to obtain
one.  (Id. at 65)  She corroborated that her husband hears voices
and is depressed.  (Id. at 68)

       **D.   Vocational Evidence**

6

During the administrative hearing, the ALJ called a
vocational expert, William G. Slademan, III.  (Id. at 75)  The
ALJ asked the vocational expert the hypothetical question:

> A younger individual, a high school education, work
> history as described without regard to testimony.  I
> want up to light residual functional capacity with a
> five pound weight limitation on the non-dominant left
> upper extremity on a lift/carry.  Because of the fear
> of heights, no heights.  Simple routine repetitive
> tasks, minimal interaction with the public and co-
> workers.  These occupations involve no repetitive
> gripping and grasping of the non-dominant left upper
> extremity.  What if any jobs exist at light or
> sedentary - preferably light?

The vocational expert replied that jobs such as mail clerk,
marking clerk, and routing clerk all had low physical demands and
were unskilled jobs suitable for plaintiff.  (Id. at 77)  The ALJ
also asked the vocation expert to assume all the testimony from
the plaintiff and his wife were credible.  (Id. at 77)  The
vocation expert replied that plaintiff would not be able to work;
the headaches alone would "knock out jobs."  (Id. at 78)

## E.   Medical Evidence

Plaintiff is alleging disability as of June 13, 2001 (D.I. 8
at 109); therefore, medical examinations and evidence prior to
that time are relevant only for background purposes.  Most
relevant are the comments by Dr. Hugh Bonner III, plaintiff's
primary care physician.[2]  (Id. at 330)  Dr. Bonner noted that as

---

[2]Dr. Bonner did not complete an assessment for plaintiff's
disability benefit record.

7

of July 20, 2001, it was okay for plaintiff to return to work. (Id. at 199)   Dr. Bonner noted plaintiff's history of depression and somatization and theorized that the abdominal pain was a result of the somatization.   (Id. at 191)   Throughout Dr. Bonner's notes, he indicates that plaintiff repeatedly complained of depression and somatization - both of which were treated by other physicians.   Dr. Bonner wrote a Doctor's Certificate on July 16, 2001 indicating that plaintiff was unable to work from June 13, 2001 until July 10, 2001 because of somatization, depression and abdominal pain.   (Id. at 330)

A Disability Determination Service doctor completed a physical residual functional capacity assessment on July 31, 2001.   (Id. at 234-41)   The examiner determined that plaintiff could occassionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk about six hours in an eight hour work day, and had unlimited push and/or pull abilities.   (Id. at 235)

Patricia Lifrak, M.D., completed a psychiatric examination for the Disability Determination Service on August 25, 2001. (Id. at 244)   Dr. Lifrac concluded:   speech was normal; attention span was within normal limits; plaintiff was able to focus and remain on task; plaintiff was somewhat irritable; plaintiff's thought process was logical and goal-directed and there was no evidence of looseness of associations or flight of ideas; no evidence of delusions or hallucinations even though plaintiff

8

admitted to intermittent auditory hallucinations; plaintiff appeared to be angry and somewhat irritable.  (Id. at 246)  When plaintiff was asked the date, he stated it was Friday, August 2001, but did not recall the exact date.  (Id.)  Dr. Lifrak found plaintiff to be "oriented to place, person and situation."  (Id. at 247)  Dr. Lifrak noted some impairment in concentration during the orientation and memory exercises.  (Id. at 247)  Dr. Lifrak stated that "[c]ognative function, intelligence and fund of knowledge appeared to be average for age and educational level. Judgement and insight appeared to be fair during the interview." (Id.)  Dr. Lifrak's diagnosis was major depression, recurrent, moderate, with psychotic features and gave a global assessment of functioning of 60.  (Id.)  The prognosis was "fair with continued treatment."  (Id.)

On December 5, 2001, Donald H. Morgan, M.D., performed a consultative physical examination for the Disability Determination Service.  (Id. at 294)  Dr. Morgan described plaintiff as an obese well-developed black male, 5'6 1/2" and 208 pounds.  (Id. at 295)  Dr. Morgan noted plaintiff could dress and undress himself without difficulty; can get in and out of a chair; can get on and off the table; and assumes the sitting and supine positions without difficulty.  (Id. at 296)

On December 21, 2001, a Disability Determination Services doctor completed a physical residual functional capacity

9

evaluation. (Id. at 309) This doctor concluded that plaintiff
could occasionally lift 50 pounds, could frequently lift 25
pounds, could stand and/or walk for a total of about six hours in
an eight hour work day and was unlimited in his ability to push
or pull. (Id. at 310)

On September 16, 2002, the Disability Determination Service
sent plaintiff to S. M. Iqbal, Ph.D., for a clinical
psychological evaluation. (Id. at 367) Dr. Iqbal noted that
plaintiff was alert and oriented to time, place and person. (Id.
at 369) Plaintiff was able to give his date of birth and the
current date. (Id.) Plaintiff denied being crazy, but rather
stated he is suspicious about not receiving fair consideration
for benefits. (Id.) Dr. Iqbal stated that plaintiff was
"generally self-centered, one-track mind, and somewhat
narcissistic and demanding." (Id. at 369-70) Dr. Iqbal reported
that plaintiff "seems to be functioning within the Borderline
Range of Intelligence." (Id. at 370) Dr. Iqbal stated that
plaintiff's "thoughts generally appeared to be distorted with the
flavor of a mistrust, anxiety, self-centeredness." (Id. at 370)
Dr. Iqbal noted that plaintiff has difficulties with
interpersonal skills and to accurately interpret social stimuli.
(Id.) "His personality seems to be showing a likelihood that is
in favor of poor judgement, confused thoughts, difficulty
thinking logically, strange beliefs and need for fulfillment of

10

fantasies." (Id.) Dr. Iqbal's diagnosis was generalized anxiety disorder with paranoid features and adjustment disorder with anxious mood. Dr. Iqbal's prognosis for plaintiff was "considered guarded." (Id. at 371) Dr. Iqbal found plaintiff's impairments in the psychological functional capacities evaluation form to be mild or moderate. (Id. at 372) However, in the ability to do work-related activities form, Dr. Iqbal noted plaintiff had a "marked" restriction in the ability to make judgements on simple work-related decisions. (Id. at 374)

## III. STANDARD OF REVIEW

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive," and the court will set aside the Commissioner's denial of plaintiff's claim only if it is "unsupported by substantial evidence." 42 U.S.C. § 405(g) (2002); 5 U.S.C. § 706(2)(E) (1999); see Menswear Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). As the Supreme Court has held,

> "[s]ubstantial evidence is more than a mere
> scintilla. It means such relevant evidence
> as a reasonable mind might accept as adequate
> to support a conclusion." Accordingly, it
> "must do more than create a suspicion of the
> existence of the fact to be established . . .
> . [I]t must be enough to justify, if the
> trial were to a jury, a refusal to direct a
> verdict when the conclusion sought to be
> drawn from it is one of fact for the jury."

Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300

(1939)).

The Supreme Court also has embraced this standard as the appropriate standard for determining the availability of summary judgment pursuant to Fed. R. Civ. P. 56:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
> Petitioners suggest, and we agree, that this standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)

(internal citations omitted).   Thus, in the context of judicial

review under § 405(g),

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence — particularly certain types of evidence (e.g., that offered by treating physicians) — or if it really constitutes not evidence but mere conclusion.

Brewster v. Heckler, 786 F.2d 581, 584 (3d Cir. 1986) (quoting

Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).   Where, for

example, the countervailing evidence consists primarily of the

claimant's subjective complaints of disabling pain, the ALJ "must

consider the subjective pain and specify his reasons for

12

rejecting these claims and support his conclusion with medical evidence in the record." Mattullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990).

## IV. DISCUSSION

### A. Disability Determination Process

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), as amended, "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." Bowen v. Yuckert, 482 U.S. 137, 140 (1987). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A) (2002).

In Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999), the Third Circuit outlined the applicable statutory and regulatory process for determining whether a disability exists:

> In order to establish a disability under the Social Security Act, a claimant must demonstrate there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." A claimant is considered unable to engage in any substantial activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

13

age, education, and work experience, engage
in any other kind of substantial gainful work
which exists in the national economy."

    The Social Security Administration has
promulgated regulations incorporating a sequential
evaluation process for determining whether a
claimant is under a disability.  In step one, the
Commissioner must determine whether the claimant
is currently engaging in substantial gainful
activity.  If a claimant is found to be engaged in
substantial activity, the disability claim will be
denied.  In step two, the Commissioner must
determine whether the claimant is suffering from a
severe impairment.  If the claimant fails to show
that her impairments are "severe", she is
ineligible for disability benefits.

    In step three, the Commissioner compares
the medical evidence of the claimant's
impairment to a list of impairments presumed
severe enough to preclude any gainful work.
If a claimant does not suffer from a listed
impairment or its equivalent, the analysis
proceeds to steps four and five.  Step four
requires the ALJ to consider whether the
claimant retains the residual functional
capacity to perform her past relevant work.
The claimant bears the burden of
demonstrating an inability to return to her
past relevant work.

    If the claimant is unable to resume her
former occupation, the evaluation moves to the
final step.  At this stage, the burden of
production shifts to the Commissioner, who must
demonstrate the claimant is capable of performing
other available work in order to deny a claim of
disability.  The ALJ must show there are other
jobs existing in significant numbers in the
national economy which the claimant can perform,
consistent with her medical impairments, age,
education, past work experience, and residual
functional capacity.  The ALJ must analyze the
cumulative effect of all the claimant's
impairments in determining whether she is capable
of performing work and is not disabled.  The ALJ
will often seek the assistance of a vocational

14

expert at this fifth step.

Id. at 427-28 (internal citations omitted).  If the ALJ finds

that a claimant is disabled or not disabled at any point in the

sequence, review does not proceed to the next step.  See 20

C.F.R. § 404.1520(a) (2002).

## B.    Application of the Five-Step Test

In the present case, the court recognizes that the first two

steps of the five-part test to determine whether a person is

disabled are not at issue: (1) the ALJ determined that plaintiff

has not engaged in substantial gainful activity since the alleged

onset of his disability in June 2001; and (2) the ALJ qualified

plaintiff's impairments as "severe" impairments.  Plaintiff

contests the ALJ's finding regarding plaintiff's residual

functional capacity ("RFC") and the ALJ's determination that

plaintiff's impairments do not meet or medically equal one of the

medical impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.

1, that would preclude any gainful work.

Specifically, plaintiff challenges the ALJ's finding that he

has an RFC to perform work in the national economy because the

ALJ failed to include all of the plaintiff's medically

determinable impairments and medically-supported subjective

complaints of pain.  The ALJ concluded that

        the claimant has the residual functional capacity to
        lift and carry 20 pounds and engage in a good deal of
        standing, walking, and sitting.  These functional
        abilities are consistent with the performance of a full

15

range of light work.  He may also require jobs not
involving heights.  The claimant's psychiatric symptoms
and subjective discomfort may limit him to unskilled
jobs involving simple, routine job tasks with minimal
interaction with the public and co-workers.

Plaintiff alleges the RFC finding did not consider

uncontroverted evidence in the record that [plaintiff]
suffered from anxiety disorder, somatization disorder,
he had a memory deficiency, he heard voices, he had a
degree of restriction of daily activities, he appeared
angry when interacting with others, he had paranoid and
irrational thoughts, he was functioning within the
borderline range of intelligence, he had difficulty
thinking logically, he had a marked limitation in his
ability to make judgments on simple work-related
decisions, and he had physical pain that resulted from
somatization disorder.

(D.I. 16 at 22)  Plaintiff asserts that the ALJ did not properly

consider the entirety of Dr. Lifrak and Dr. Iqbal's reports and

improperly discounted aspects of the medical reports without

explanation, rendering the determination unsupported by

substantial evidence.

Furthermore, under a similar analysis of the medical

evidence, plaintiff asserts that the ALJ's determination that

plaintiff's mental condition does not meet the listing 12.04 is

not supported by substantial evidence.  Plaintiff contends that,

had the ALJ properly evaluated the medical evidence of

plaintiff's condition, he would have been required to find that

the plaintiff was disabled.  Finally, plaintiff asserts that the

ALJ's determination that plaintiff's subjective complaints were

not credible was not supported by substantial evidence.

16

For the court to set aside defendant's conclusion that plaintiff was not under a "disability" as defined by the Social Security Act and to grant plaintiff's motion for summary judgment, plaintiff must show that the ALJ's findings are not supported by substantial evidence. The court, therefore, recognizes that the defendant's decision is entitled to substantial deference.

"'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000) (quoting Hartranft v. Apfel, 181 F.3d 358, 359 n. 1 (3d Cir.1999)); see also 20 C.F.R. § 404.1545(a). The ALJ must consider all relevant evidence when determining an individual's RFC in step four. See 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546; Burnett, 220 F.3d at 121. That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others. See 20 C.F.R. § 404.1545(a). Moreover, the ALJ's finding of RFC must "be accompanied by a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).

C.   Medical Reports

1.   Dr. Lifrak's report

17

The ALJ included the following summary of Dr. Lifrak's medical report.

> On August 25, 2001, Dr. Patricia Lifrak conducted a
> consultative psychiatric examination.  Mr. Savage
> allged that he stopped working due to diverticulitis.
> The claimant alleged depression.  He was incarcerated
> twice for offensive touching and reckless endangerment.
> He denied any psychiatric hospitalization.  A mental
> status examination was within normal limits.  The
> claimant was able to focus and remain on task.  His
> thought processes were logical and goal-directed.  His
> cognitive functioning was normal.  The diagnosis was
> recurrent moderate major depression with a Global
> Assessment of Functioning (GAF) of 60.  Dr. Lifrak also
> completed a mental functioning assessment.  The
> claimant's limitations were primarily mild or moderate.
> Mr. Savage had moderate to moderately severe
> limitations regarding relating to other people,
> performing work requiring frequent contact with others,
> and performing complex tasks.  He had only mild
> limitation in the ability to do simple tasks on a
> sustained basis.

(internal citations omitted)  The ALJ incorrectly states that the mental status examination was "within normal limits."[3]  If the ALJ came to the conclusion regarding the examination himself, from the objective medical evidence, it must be explained. Besides this one inconsistency, the ALJ sufficiently summarized the report of Dr. Lifrak.  See Fargnoli v. Massanari, 247 F.3d 34, 42 (Fed. Cir. 2001) (concluding that the ALJ need not make reference to every piece of evidence in the record). Furthermore, the only other information left out of the ALJ's summary was indicative of plaintiff's lack of a disability.

---

[3]The report states that plaintiff's attention span was "within normal limits."

18

## 2. Dr. Iqbal's report

The ALJ included the following discussion of Dr. Iqbal's report.

> On September 16, 2002, Dr. S. M. Iqbal conducted a consultative psychological examination. He noted the claimant's history of substance abuse. The claimant's affect was appropriate and his mood was irritable. Mr. Savage was suspicious and hostile. He denied being crazy or paranoid. Dr. Iqbal wrote that somatization is likely to be a product of the claimant's thought processes. The diagnosis was a generalized anxiety disorder with paranoid features and an adjustment disorder with anxious mood. Dr. Iqbal also completed a mental functional assessment indicating that the claimant had mostly mild to moderate limitations. Dr. Iqbal concluded that the claimant did not have a chronic brain syndrome or psychotic disorder. Mr. Savage had only "slight" restriction involving understanding, remembering, and carrying out simple instructions.

The court finds that the ALJ excluded certain information contained in Dr. Iqbal's report that must either be considered or the ALJ must adequately explain why it was discredited. For instance, Dr. Iqbal included a thorough discussion of plaintiff's distorted thought process and poor judgment.[4] The ALJ did not consider this evidence in his determination and did not explain why it was discredited. In addition, Dr. Iqbal gave plaintiff a "marked" restriction in his ability to make judgments. The ALJ

---

[4]Dr. Iqbal stated that plaintiff's "thoughts generally appeared to be distorted with the flavor of mistrust, anxiety, self-centeredness. His judgement seems to be clouded by this thought process and preoccupation." Plaintiff shows a personality that has "poor judgment, confused thoughts, difficulty thinking logically. . .."

19

did not consider this in his determination and he did not explain why this information was not included. Dr. Iqbal stated that plaintiff's "[c]oncentration is also limited." Furthermore, Dr. Iqbal reported that plaintiff is functioning in the Borderline Range of Intelligence, plaintiff's personality reflects one which is "anxious, nervous, and feels like a failure" and plaintiff "seems to have significant difficulty in interpersonal relationships." None of these conclusions were represented in the ALJ's decision and summary of Dr. Iqbal's report.

### 3. ALJ's conclusions regarding plaintiff's medical condition

In the ALJ's decision, he made several conclusions regarding the medical evidence: (1) the consultative psychological and psychiatric examinations noted moderate problems involving social functioning, but no marked impairment; (2) the claimant has mild limitations involving concentration, persistence, or pace; (3) the mental functional assessments in record indicate that the plaintiff has mild or slight limitations regarding understanding and carrying out simple instructions consistent with unskilled work; (4) plaintiff's thought processes were "normal" pursuant to the consultative psychiatric examination; (5) the plaintiff does not have any marked or extreme functional limitations. The ALJ also made a conclusory statement regarding the RFC stating that "[p]ursuant to functional assessments from a consultative psychiatrist and psychologist, Mr. Savage also has the mental

20

functional ability to perform unskilled work not involving frequent interaction with other people."

Regarding all of these conclusions, the reports of Dr. Iqbal and Dr. Lafrik are inconsistent. The ALJ is disregarding the conclusions of one doctor in favor of the other. "Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided." Fargnoli, 246 F.3d at 42. "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." Id. at 43. For this reason, the court remands to the ALJ for further discussion on why certain evidence was completely disregarded.

First, the conclusion that only moderate problems involving social functioning were found is not adequately explained. Dr. Lifrak's report marked the area of moderate to moderately severe for both the degree of impairment in plaintiff's ability to relate to other people and in the limitation of performing work requiring frequent contact with others. Second, it is unclear from where the ALJ's conclusion regarding mild limitations in "concentration, persistence, or pace" arose. Dr. Iqbal noted that plaintiff's concentration was "limited." Dr. Lifrak also noted that "[t]here was impairment noted in concentration." The

21

ALJ does not explain how he came to his conclusion regarding concentration, persistence and pace. Third, the ALJ found "mild or slight limitations" regarding understanding and carrying out simple instructions. Yet, Dr. Lifrak found plaintiff's limitations to comprehend and follow instructions to be "moderate" and plaintiff's ability to perform repetitive tasks to be "moderate." Fourth, the ALJ stated that plaintiff's thought processes were "normal" according to the psychiatric examination. However, as discussed above, the psychologist, Dr. Iqbal, found this not to be true. Finally, the ALJ concluded that plaintiff did not have any marked or extreme functional limitations. Again, this is not the case, as Dr. Iqbal gave plaintiff a "marked" limitation in plaintiff's ability to make judgements on simple work-related decisions.

It is the responsibility of the ALJ to weigh the evidence and make determinations on contradicting evidence. However, if contradicting evidence is in the record, the ALJ must explain how he came to his conclusions. Furthermore, the ALJ must explain what evidence was discounted, as opposed to merely ignoring the evidence. For further discussion on these issues related both to plaintiff's RFC and whether plaintiff qualifies for a disability under listing 12.04, the case is remanded.

## D. Credibility Determinations

Plaintiff also asserts that the ALJ improperly discredited

22

plaintiff's testimony and subjective complaints.  The statute
requires deference to the ALJ's findings of fact so long as those
findings are supported by substantial evidence of record.
Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d
Cir. 1986).  Although "[a]n ALJ must give serious consideration
to claimant's subjective complaints of pain," Mason v. Shalala,
994 F.2d 1058, 1067 (3d Cir. 1993), subjective complaints of pain
"do not in themselves constitute disability." Green v. Schweiker,
749 F.2d 1066, 1070 (3rd Cir. 1984).  Subjective complaints are
given "great weight" unless there is conflicting medical
evidence.  See Mason, 994 F.2d at 1067-68. When a claimant's
subjective complaints of pain indicate a greater severity of
impairment than the objective medical evidence supports, the ALJ
can give weight to factors such as physician's reports and
claimant's daily activities.  See 20 C.F.R. § 404.1529(c)(3)
(1995).

     While the court recognizes that the ALJ must give serious
consideration to plaintiff's allegations of pain, the court does
not find a remand on the issue is warranted.  The ALJ explained
why he did not credit the plaintiff's allegations.  The ALJ found
no medical evidence to support the allegations and used the
written submissions by the plaintiff as evidence regarding
plaintiff's abilities.  The court finds substantial evidence
exists to support the ALJ's determination to not completely

credit the allegations and testimony regarding the severity of plaintiff's impairments.[5]

## V.   CONCLUSION

For the reasons stated herein, the court denies plaintiff's motion for summary judgment and denies defendant's cross-motion for summary judgment.   The case is remanded to the defendant.

---

[5]Plaintiff also asserts that the ALJ's conclusion that plaintiff can "engage in a good deal of standing, walking and sitting" is not clear and not supported by the record.   The court finds that support for this statement is found in the medical record, in plaintiff's written submissions to the Disability Determination Service and in plaintiff's testimony.   Furthermore, the statement is clarified by the ALJ's determination that plaintiff can perform a full or wide range of light work, as defined by the Medical-Vocational Guidelines.